CHARLES STELL, PROSECUTOR, v. THE MAYOR AND ALDERMEN OF JERSEY CITY, RESPONDENT.

Argued June 2, 1920—Decided July 8, 1920.

1. A city does not have the constitutional right to make expenditures to defend tenants of houses in dispossession proceedings brought against them.
2. An ordinance requiring owners of property, occupied for housing purposes, to file with the city clerk a copy of any notice served upon the tenants or occupants demanding possession of the premises or increasing the rent thereof, is unreasonable and will be set aside.

On *certiorari.*

Before Justices Swayze, Parker and Black.

For the prosecutor, *Merritt Lane.*

For the city, *John Bentley* (*John Milton* on the brief).

The opinion of the court was delivered by

Swayze, J.   There are three writs of *certiorari* which may be treated together.   The prosecutor is a taxpayer of Jersey City and the resolutions involve the expenditure of public moneys.

The first resolution is that the director of revenue and finance be directed and authorized to investigate all cases where unscrupulous owners have demanded unconscionable sums of money for rent, in many instances beyond the ability of tenants to pay, thereby resulting in innumerable proceedings to dispossess against the tenants whereby families, many of them with children, will be without shelter unless instant means are taken to meet the situation; and he is authorized in his discretion to expend and disburse so much money as may be necessary in the defence of all such cases (probably meaning proceedings to dispossess), including the original

deposit required for a jury trial and the retaining or employing of such legal or other assistance as he may need in the defence of such cases. The director is also authorized and directed to advertise in the local newspapers that the defendant in any such case as is hereinabove referred to may present his defence to the director who will take such steps therein as may be necessary in the premises. What steps he may take is not indicated, but evidently what is meant is that the director should, if he thinks proper, defend the proceedings to dispossess. We pass by the declamatory parts of the resolution and treat it as authorizing what is undoubtedly meant to be authorized.

The second resolution directs that warrants be drawn on the city treasurer for the moneys required. It is shown that the money of the city has been spent for costs in proceedings of the character referred to and for counsel fees.

The third writ removes an ordinance requiring the owner of property occupied for living purposes to file with the city clerk a copy of any notice served upon tenants or occupants demanding possession of the premises or increasing the rent thereof. A rather lame attempt is made to pretend that the object of this ordinance is to assist the city clerk in dividing the city into election districts and by way of aiding him to ascertain the number of inhabitants in election districts. The ordinance is curiously ill-adapted to that purpose which is already provided for in the election laws, and it is quite obvious that this is a mere pretext and that the real intent of the ordinance is to enable the city to intervene in a private litigation where one is pending and for that purpose to secure a notice of the threat of such proceedings. So far as the first two resolutions are concerned, they are clearly illegal. Our constitution provides that no city shall hereafter give any money or property or loan to any individual, association or corporation, or become security or be directly or indirectly the owner of any stocks or bonds of any corporation or association. We think this includes the advancement of city money to defend private litigants in their law suits. The curious notion, that the authority given by the Walsh Com-

mission Government act to the city to pass ordinances necessary for the protection of life, health and property, and to preserve and enforce the good government and general welfare, order and security of the city, authorizes an appropriation of this kind hardly requires notice. It is enough to say that any authority of the city government to protect property certainly cannot include authority to deprive owners of property of the beneficial use thereof. The general welfare and good government of the city requires that the city should see that so far as it is concerned all of the citizens are secured their rights, and it is a manifest perversion of the very object of the statute to use the power and money of the municipality for the protection of one class of citizezns at the expense of another. No doubt it is desirable that there should be houses for all citizens, but they cannot be provided legally by using without leave or confiscating the property of house owners. Housing can only be provided either in the ordinary commercial way or by private charity. These resolutions are clearly bad and must be set aside.

The third resolution is unreasonable because it imposes an additional burden upon the owners of rented property and for no *bona fide* purpose but for a mere pretence. This resolution also must be set aside.

The prosecutor is entitled to costs.